HUNTON ANDREWS KURTH LLP
SCOTT P. DEVRIES (State Bar No. 88221)
MICHAEL L. HUGGINS (State Bar No. 305562)
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701
sdevries@HuntonAK.com
mhuggins@HuntonAK.com

WALTER J. ANDREWS (*pro hac vice* forthcoming)
ANDREA DEFIELD (*pro hac vice* forthcoming)
Sabadell Financial Center
1111 Brickell Ave, Suite 2500
Miami, Florida 33131
Telephone: 305 • 810 • 2500
Facsimile: 305 • 810 • 2460
wandrews@HuntonAK.com
adefield@HuntonAK.com

Attorneys for Plaintiffs
Out West Restaurant Group Inc.; Cerca Trova Restaurant Group, Inc.;
Cerca Trova Steakhouse, L.P.; and Cerca Trova Southwest Restaurant Group, LLC

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUT WEST RESTAURANT GROUP INC.; CERCA TROVA RESTAURANT GROUP, INC.; CERCA TROVA STEAKHOUSE, L.P.; AND CERCA TROVA SOUTHWEST RESTAURANT GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AFFILIATED FM INSURANCE COMPANY, <br><br> Defendant. | CASE NO.: <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

## COMPLAINT

Plaintiffs OUT WEST RESTAURANT GROUP INC.; CERCA TROVA RESTAURANT GROUP, INC.; CERCA TROVA STEAKHOUSE, L.P.; and CERCA TROVA SOUTHWEST RESTAURANT GROUP, LLC (collectively, "Out West"), file this Complaint for damages, declaratory relief, and punitive damages against Defendant AFFILIATED FM INSURANCE COMPANY ("AFM"), alleging the following:

## INTRODUCTION

1. This diversity action arises from AFM's improper investigation and refusal to pay Out West's claim for insurance coverage under an "all risks" insurance policy that AFM sold to Plaintiff Cerca Trova Restaurant Group, Inc., the ultimate parent of the other Plaintiffs in this litigation.

2. Like many businesses throughout the country, Out West has sustained devastating monetary losses because of physical loss of and/or damage to, property from COVID-19 and government orders that resulted from same.

3. COVID-19, and what flowed therefrom, caused direct and/or imminent physical loss and/or damage to property and the AFM policy unambiguously provides coverage for Out West's COVID-19 related losses.

4. Out West had a reasonable expectation that the AFM All Risks Policy would cover its COVID-19 related losses and promptly made a claim to AFM.

5. In response, AFM tried to wrongfully shoehorn Out West's claim into a narrow and limited grant of coverage, while contending – without textual support in the Policy – that all other coverage is excluded.

6. In denying coverage, AFM ignored long accepted constructions of the operative insurance policy terms, and the well-established policy of California courts to, wherever reasonably possible, construe ambiguities in standard form policy wording against its drafter.

7. At a minimum, this would merely mean the policy terms would be

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

ambiguous, in which case they would be construed in Out West's favor, as AFM's interpretation is not the only reasonable interpretation.  The fact that decisions by federal court judges in *Studio 417, Inc., et. al. v. The Cincinnati Insurance Co.*, No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020) and in *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co.*, No. 6:20-cv-1174 (M.D. Fla. Sept. 24, 2020), and by a New Jersey state court judge in *Optical Services USA/CI v. Franklin Mutual Insurance Co.,* No. BER-L-3681-20 (N.J. Super. Ct. Aug. 13, 2020) accepted the Policyholder's construction makes this construction *per se* reasonable.

8.     By this action, Out West seeks to compel AFM to provide the insurance benefits it committed to provide when it sold the insurance policy.  Further, given AFM's wrongful denial of coverage, its denial of Out West's claim without a reasonable investigation, its intentional misconstruction of the express terms of the insurance policy, its wrongful attempt to coerce Out West to forego a covered claim, and its flagrant disregard for California law, pursuant to which the policy provisions must be interpreted, Out West seeks punitive damages and other damages deemed appropriate by the Court.

## PARTIES

9.     Plaintiff Out West Restaurant Group, Inc. is a California restaurant management company with its principal place of business in San Diego.  It is the exclusive franchisee of Outback Steakhouse restaurants in Arizona, Colorado, Nevada, and New Mexico, and the predominate franchisee in California, operating approximately 100 Outback Steakhouse restaurants across those states.

10.     Plaintiff Cerca Trova Steakhouse, L.P. is a California limited partnership that holds the leases for all California restaurants.  Its principal place of business is in San Diego, California.

11.     Plaintiff Cerca Trova Southwest Restaurant Group, LLC is a Florida limited liability company that holds all of the leases for the non-California restaurants. Its principal place of business is in San Diego, California and its manager and

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

president resides in San Diego, CA. Cerca Trova Southwest Restaurant Group, LLC's sole member is Cerca Trova Restaurant Group Holdings, Inc., a Delaware corporation with its principal place of business in San Diego, California.

12.     Plaintiff Cerca Trova Restaurant Group, Inc., ("Cerca Trova") is the ultimate parent of the Out West entities.  It is incorporated under the laws of the State of Delaware and has its principal place of business in San Diego, California.

13.     Defendant AFM is incorporated under the laws of the State of Rhode Island, has its principal place of business in Johnston, Rhode Island, is licensed to do business in California, maintains an office in Walnut Creek, California[1] and is required to comply with California insurance requirements and law.  AFM is a member of the FM Global Group.[2]

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1 and 2), §1391(c)(2) and §1391(d) because AFM does business in California and is an authorized property and casualty insurer in California, because AFM maintains an office in Walnut Creek, California, and because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated in, this District.

## FACTUAL BACKGROUND

### A.     Out West's Operations

---

[1] *Find an AFM Office*, AFFILIATED FM, https://www.affiliatedfm.com/report-contact-page/find-an-afm-office-in-the-united-states (last visited Sept. 29, 2020) (identifying a San Francisco AFM office at 1333 N. California Blvd. Suite 200 Walnut Creek, California 94596).

[2] *Business Profile*, AFFILIATED FM, https://www.affiliatedfm.com/about/business-profile (last visited Sept. 29, 2020).

16.     Out West operates approximately 100 Outback Steakhouse locations across Arizona, California, Colorado, Nevada, and New Mexico.

17.     Outback Steakhouse is a chain of Australian-inspired steakhouse restaurants that is beloved worldwide for its steak cuts, chicken, ribs, seafood, pasta, and the famous Bloomin' Onion®.

18.     Outback Steakhouse distinguishes itself by emphasizing consistently high quality delicious food delivering a warm, welcoming environment.

19.     The freshness of Outback Steakhouse's food inventory is critical to its business operations and emblematic of its reputation and brand.

20.     In addition, its excellent customer service and friendly and welcoming atmosphere at its physical locations are critical to its business operations, reputation, and brand.

21.     Outback Steakhouses are not quick-service restaurants, "fast casual" restaurants, or fast food restaurants.  Rather, Outback Steakhouse, and thus Out West's business, focuses on in-restaurant dining with in-house bars serving signature drinks.

22.     The vast majority of each relevant Outback Steakhouse's physical space are dedicated exclusively to in-restaurant dining, and this accounts for the overwhelming bulk of Out West's revenues.  Indeed, the restaurant dining rooms are designed to accommodate "a party of any size."[3]

23.     The closure of Out West's in-restaurant dining rooms and in-house bars significantly impaired its business operations.  As a result, the restaurants themselves were unable to be used for their intended purposes.

**B.     COVID-19 as a Deadly Communicable Disease**

24.     COVID-19 is a deadly communicable disease caused by the most

---

[3] *See, e.g., Our Restaurants*, BLOOMIN' BRANDS INC., https://franchise.bloominbrands.com/global/brands/outback-steakhouse/our-restaurant (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1    recently discovered coronavirus.[4]

2        25.    On March 11, 2020, the World Health Organization (the "WHO")

3    declared the COVID-19 outbreak a pandemic.[5]

4        26.    As of September 29, 2020, COVID-19 has infected over 7 million people

5    in the United States and caused more than 204,000 deaths.[6]  California has had over

6    802,300 confirmed cases of COVID-19, Colorado has had over 69,000 confirmed

7    cases of COVID-19, Arizona has had over 217,200 confirmed cases of COVID-19,

8    New Mexico has had over 28,800 confirmed cases of COVID-19, and Nevada has had

9    over 78,800 confirmed cases of COVID-19.[7]

10                              **THE POLICY**

11       27.    To protect itself from catastrophic losses, Out West's parent company,

12    Cerca Trova Restaurant Group, Inc., purchased an insurance policy from AFM.

13       28.    The AFM Policy issued to Out West is policy no. MN263 (the "AFM

14    Policy" or the "Policy") and has an effective date of February 15, 2020 to December

15    1, 2020.  A true copy of the Policy is attached as Exhibit A and incorporated herein *in*

16    *hac verbem*.

17       29.    The AFM Policy is on AFM's "proVision® 4100 Policy" form.

18       30.    The Policy contains a "Location Schedule" that identifies 100 Out West

19    locations as insured locations, referred to as "described locations" in the Policy.

21    [4] Press Release, Centers for Disease Control and Prevention ("CDC"), *First Travel-related
22    Case of 2019 Novel Coronavirus Detected in United States* (Jan. 21, 2020),
      https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last
23    visited Sept. 29, 2020).

24    [5] Heath Kelly*, The classical definition of a pandemic is not elusive*, 89 Bulletin of the World
      Health Organization 7, at 540-41 (2011), https://www.who.int/bulletin/volumes/89/7/11-
25    088815/en/#:~:text=A%20pandemic%20is%20defined%20as (last visited Sept. 29, 2020).

26    [6] CDC, *Cases in the U.S.* (last updated Sept. 27, 2020),
      https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited
27    Sept. 28, 2020).

28    [7] CDC, *CDC COVID Data Tracker* (last updated Sept. 27, 2020),
      https://covid.cdc.gov/covid-data-tracker/#cases (last visited Sept. 28, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

31.     The Policy covers Out West for "all risks of physical loss or damage," except as excluded, to property, as described in the Policy. (Ex. A at COMPLAINT-00005.)  Thus all risks, not otherwise excluded, are covered causes of loss.

32.     The Policy contains numerous different coverage parts, each with an applicable deductible and limit or sublimit of liability.  The majority of the coverage parts are not mutually exclusive.  Thus, a policyholder's loss may trigger several different coverage parts.

**A.     <u>Named Insured</u>**

33.     The Policy identifies Cerca Trova Restaurant Group, Inc. as the Named Insured "and its wholly or majority owned subsidiaries and any interest which may now exist or hereinafter be created or acquired which are owned, controlled or operated by any one or more of those named insureds." (Ex. A at COMPAINT-00007.)

34.     Cerca Trova Restaurant Group, Inc. wholly owns the other Plaintiffs. Accordingly, all Plaintiffs are Named Insureds as defined by the Policy.

35.     The Policy provides up to $100,000,000 total limit of liability, including any insured Business Interruption loss, as a result of any one occurrence, subject to any applicable sublimits. (Ex. A at COMPLAINT-00007.)

36.     The substantial premium that AFM charged for the Policy was based on the nature of Out West's business, which as stated above, was dedicated to in-restaurant dining at the 100 locations listed on the Policy's Location Schedule.

37.     The Policy provisions applicable to this case are standard form and were drafted by AFM.[8]

---

[8] *See e.g., proVision 4100 All-Risk Property Policy*, AFM, MEMBER OF THE FM GLOBAL GROUP, https://www.affiliatedfm.com/property-coverage/-/media/74E064A2594B4B9B84D8ED8312DC80A3.ashx (last visited Sept. 28, 2020) ("The proVision® 4100 policy was designed to simplify the interactions between AFM and our broker partners, creating winning solutions for clients.").

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

B. **AFM Issued the Policy in February 2020 Without a Pandemic or COVID-19 Exclusion, Despite AFM's Knowledge of COVID-19**

38.     On January 21, 2020, the United States Centers for Disease Control (CDC) confirmed the first case of the 2019 Novel Coronavirus in the United States.[9]

39.     On January 26, 2020, the CDC confirmed the first case of the 2019 Novel Coronavirus in Arizona, specifically in Maricopa County.[10]

40.     By February 2, 2020, there were six confirmed cases of the 2019 Novel Coronavirus in California.[11]  That same week, the United States government evacuated several planes full of Americans from China to military bases in Riverside (within 60 miles of 13 insured locations), Fairfield (within 60 miles of 9 insured locations), and San Diego, California (within 60 miles of 8 insured locations) for quarantine.[12]

41.     On February 6, 2020, the first U.S. novel coronavirus death occurred in Santa Clara County, California, suggesting that the virus had been in the community and spreading for at least several weeks, if not months.[13]

---

[9] *Supra* n. 6.

[10] Carrie Feibel, *Coronavirus Case Confirmed in Arizona*, *Bringing U.S. Total to 5,* NPR (Jan. 26, 2020), https://www.npr.org/sections/goatsandsoda/2020/01/26/799726161/coronavirus-case-confirmed-in-arizona-bringing-u-s-total-to-5 (last visited Sept. 29, 2020).

[11] Ian Wheeler, *Orange County coronavirus patient released, in good condition, health officials say*, ORANGE COUNTY REGISTER (Feb. 4, 2020), https://www.ocregister.com/2020/02/04/risk-of-catching-coronavirus-in-so-cal-is-low-health-officials-say/ (last visited Sept. 29, 2020); *see also* Press Release, Cal. Dep't of Public Health Office of Public Affairs, *Six Confirmed Cases of Novel Coronavirus in California* (Feb. 2, 2020), https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-003.aspx (last visited Sept. 29, 2020).

[12] Miriam Jordan and Julie Bosman, *Hundreds of Americans Were Evacuated from the Coronavirus Epicenter. Now Comes the Wait,* N.Y. TIMES (Feb. 5, 2020), https://www.nytimes.com/2020/02/05/us/coronavirus-flights-wuhan.html (last visited Sept. 29, 2020).

[13] *See e.g.,* Matt Hamilton, Paige St. John, Rong-Gong Lin II, *Autopsies reveal first confirmed U.S. coronavirus-related deaths occurred in California in February*, LOS

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

7

42.    On February 11, 2020, several days before the Policy's inception date, the International Committee on Taxonomy of Viruses (ICTV) announced "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV-2" as the name of this new coronavirus.[14]

43.    AFM issued a binder for the Policy to Out West's agent at Marsh USA on February 13, 2020 and the Policy incepted on February 15, 2020.

44.    On or about February 4, 2020, FM Global's Vice President and Manager of Research told Business Insurance magazine that FM Global had already received notices from clients of business interruptions as a result of the novel coronavirus (2019-nCoV, later named COVID-19).[15]

45.    The Policy was issued weeks after the first cases of COVID-19 were confirmed in the United States,[16] including in California[17] and Arizona[18] – both states where Out West has insured locations that were listed on the Policy's Schedule.

ANGELES TIMES (April 21, 2020), https://www.latimes.com/california/story/2020-04-21/autopsies-reveal-first-confirmed-u-s-coronavirus-deaths-occurred-in-bay-area-in-early-february (last visited Sept. 29, 2020).

[14] WHO, *Why do the virus and the disease have different names?*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (last visited Sept. 29, 2020).

[15] Matthew Lerner and Claire Wilkinson, *Coronavirus should trigger risk management protocols: Experts*, BUSINESS INSURANCE (Feb. 4, 2020), https://www.businessinsurance.com/article/20200204/NEWS06/912332881/Coronavirus-should-trigger-risk-management-protocols-Experts (last visited Sept. 29, 2020).

[16] Press Release, CDC, *First Travel-related Case of 2019 Novel Coronavirus Detected in United States* (Jan. 21, 2020), https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last visited Sept. 29, 2020).

[17] Press Release, Cal. Dep't of Public Health Office of Public Affairs, *Six Confirmed Cases of Novel Coronavirus in California* (Feb. 2, 2020), https://www.cdph.ca.gov/Programs/OPA/Pages/NR20-003.aspx (last visited Sept. 29, 2020).

[18] Carrie Feibel, *Coronavirus Case Confirmed in Arizona, Bringing U.S. Total to 5,* NPR (Jan. 26, 2020), https://www.npr.org/sections/goatsandsoda/2020/01/26/799726161/coronavirus-case-confirmed-in-arizona-bringing-u-s-total-to-5 (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COMPLAINT AND DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

46. The Policy does not contain any COVID-19, pandemic, or communicable disease exclusions, despite the fact that AFM knew of these imminent risks when it sold the Policy to Out West.

47. While the Insurance Services Office ("ISO"), an entity charged with drafting standard form policy language for use by the insurance industry, developed a standard form and broadly worded "virus exclusion," numbered CP 01 40 0706 and titled "loss due to Virus or Bacteria" in 2006, AFM did not include that exclusion here.

48. Before selling Out West the Policy, and unbeknownst to Out West at the time it did purchase the Policy, AFM had adopted a company-wide directive on coverage (or lack thereof) for COVID-19 claims to ensure that AFM's adjusters reached the same conclusion for all COVID-19 claims. Claims personnel are instructed to follow "Talking Points" (hereinafter "AFM Talking Points"), without regard to any individual investigation of each individual claim. A true copy of the AFM Talking Points is attached as Exhibit B.

49. AFM instructed all of its claims personnel to deny coverage under several pertinent coverage grants across the board and regardless of what the claims handler's investigation revealed.

50. The AFM Talking Points are titled "Talking Points on the 2019 Novel Coronavirus (2019-nCoV)" and refer to COVID-19 only as the "2019 Novel Coronavirus (2019-nCoV)." "2019 Novel Coronavirus (2019-nCoV)" was the prior name of COVID-19, and was changed to COVID-19 (short for Coronavirus Disease 2019) by the WHO on February 11, 2020. By referring to COVID-19's prior name, AFM apparently issued the AFM Talking Points before the name change, which occurred on or before February 11, 2020.

51. Thus, AFM issued the AFM Talking Points before AFM issued the Policy to Out West.

**C.    COVID-19 is a "Communicable Disease" and "Communicable Disease" is a Covered Cause of Loss**

52.    "Communicable Disease" is defined in the Policy in relevant part, as "disease which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges." (Ex. A at COMPLAINT-00063.)

53.    AFM has itself admitted in letters to Out West that COVID-19 is a "Communicable Disease."  See a true copy of letter from AFM to Out West dated April 17, 2020, attached as Exhibit C.

54.    As discussed more fully below, the Policy includes "Communicable Disease – Property Damage" coverage as part of the "All Risks" coverage part.  This demonstrates that COVID-19, as a "Communicable Disease" is a covered cause of loss.

55.    Further, there is no exclusion in the Policy for Communicable Disease, making it a covered cause of loss under a plain reading of the "All Risks" coverage.

**D.    COVID-19 Has Caused and Continues to Cause Physical Loss or Damage to Property**

56.    The relevant coverage grants in the Policy are triggered by physical loss or damage to specified property: either Out West's property (the insured locations identified on the Schedule) or certain other specified property, such as the property of others in Out West's supply chain or the property of third-parties within a designated mile-radius of Out West's insured locations.

57.    COVID-19 causes physical loss and/or damage to property.

- *Physical "Damage" to Property*

58.    The Policy does not provide a definition of "damage" and the term reasonably encompasses some and/or all of the loss Out West has sustained.

59.    AFM construes the undefined term "damage" narrowly, enabling it to avoid covering Out West's losses, an assertion contrary to generally accepted rules of

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

construction in California which provide that wherever reasonably possible, courts will construe ambiguities in a standard form policy against the drafter.

60. AFM's position is also in conflict with the terms of the Policy.

61. As discussed more fully below, the Policy includes, in addition to, and not in lieu of, other coverages in the Policy, a coverage grant titled "Communicable Disease – Property Damage."

62. The fact that the coverage is named "Communicable Disease – Property Damage" must mean, contrary to FM's recent coverage position, that Communicable Disease causes damage to property.

63. The Communicable Disease – Property Damage coverage provides coverage for costs incurred in the "cleanup, removal and disposal of . . . communicable disease." Thus, the Policy explicitly recognizes that Communicable Disease, including COVID-19, causes a physical, tangible alteration to the integrity of the property.

64. As set forth in AFM's regulatory filings, the prior version of this policy form listed the Communicable Disease – Property Damage coverage under the heading "Additional Property Damage Coverages."[19] The heading was changed in 2016 to "Additional Coverages" with the intent to "simplify the coverage wordings and to provide enhanced cover."[20]

65. The Policy also provides, in addition to, and not in lieu of, the other coverages in the Policy, Communicable Disease – Business Interruption Coverage.

66. The deductible provision further demonstrates that, under the Policy, Communicable Disease causes physical damage to property. It states that the Policy's specific Communicable Disease Business Interruption Deductible is determined in reference to "the 100% actual annual business interruption value that would have been

---

[19] Affiliated FM Insurance Company, Product AFM-2016-3, at COMPLAINT-000121, 00123-24, 65-66 (New York, filed Aug. 18, 2020), attached as Exhibit F.

[20] Id.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

earned had no loss occurred ***at the location where the physical damage happened*** . . . ." (Exhibit A at COMPLAINT-00010 (emphasis added)).

• *Physical "Loss" to Property*

67. Moreover, the AFM All Risks Policy does not define the term "loss" and the term reasonably encompasses some and/or all of the loss Out West has sustained.

68. AFM construes the undefined term "loss" narrowly, attempting to avoid covering Out West's losses, a construction contrary to generally accepted rules of construction in California which provide that wherever reasonably possible, courts will construe ambiguities in a standard form policy against the drafter.

69. The term "loss" has a separate and distinct meaning from the term "damage," including, but not limited to, loss of use, loss of functionality for intended purpose, or loss of value, any and all of which would be reasonable constructions of the term "loss."

• *How COVID-19 Causes Physical Loss and/or Damage to Property*

70. Where COVID-19 is on-site at a location, it causes physical loss and/or damage to that property.

71. Some studies find that COVID-19 present in the air causes physical loss and/or damage to the property.

72. A cloud of droplets of saliva or nasal discharge of an infected person, which may be released by a cough, a sneeze, or loud speech, can linger in the air for a period of minutes to hours, and can be pulled into air circulation systems.[21]

73. This is a particular risk to restaurants. The CDC published a study in July 2020 concluding that "droplet transmission was prompted by air-conditioned ventilation" that caused an outbreak among people who dined in the same air-

---

[21] Ramon Padilla & Javiar Zarracina, *Coronavirus might spread much farther than 6 feet in the air. CDC says wear a mask in public.* USA Today (last updated Sept. 21, 2020), www.usatoday.com/in-depth/news/2020/04/03/coronavirusprotection-how-masks-might-stop-spread-throughcoughs/5086553002/ (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1  conditioned restaurant.[22]

2  74.  The CDC notes that more studies are required to understand COVID-19

3  transmission, but the uncertainty has serious implications for food services safety.

4  Indeed, the CDC's risk assessment graphic for the restaurant industry demonstrates

5  that restaurants and bars that provide outdoor or indoor seating with no spacing

6  restrictions create the highest risk for the spread of COVID-19.[23]

7  75.  The presence of COVID-19 in the air at a property renders the property

8  unusable, uninhabitable, and/or unfit for its normal occupancy.

9  76.  COVID-19 also can spread through surface- or object-to-person

10  transmission after an infected person has touched a surface.[24]

11  77.  The SARS-CoV-2 can remain on various objects and surfaces for a

12  period of hours to numerous days.[25]

13  78.  Thus, the presence of COVID-19 causes physical alteration of the

14  property.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

---

[22] Jianyun Lu, *et al.*, *COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020*, 26 Emerging Infectious Diseases 7 (July 2020), https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article (last visited Sept. 29, 2020).

[23] CDC, *Restaurants and Bars: Reduce the Spread of COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/images/community/Rest_Bars_RiskAssessment.jpg (last visited Sept. 29, 2020).

[24] WHO, *How does COVID-19 spread?*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses# (last visited Sept. 29, 2020).

[25] Alex W H Chin, *et al.*, *Stability of SARS-CoV-2 in different environmental conditions*, The Lancet (Apr. 2, 2020), https://www.thelancet.com/journals/lanmic/article/PIIS2666-5247(20)30003-3/fulltext (last visited Sept. 29, 2020); The New England Journal of Medicine, *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, (Mar. 17, 2020), https://www.nejm.org/doi/full/10.1056/NEJMc2004973 (last visited Sept. 29, 2020); Boris Pastorino, *et al.*, *Prolonged Infectivity of SARS-CoV-2 in Fomites*, 26 Emerging Infectious Diseases 9 (Sept. 2020), https://wwwnc.cdc.gov/eid/article/26/9/20-1788_article (last visited Sept. 29, 2020); National Institutes of Health, *New coronavirus stable for hours on surfaces* (Mar. 17, 2020, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited Sept. 29, 2020).

79.    The existence of COVID-19 on surfaces renders that property unsafe or unusable.[26]

**E.    COVID-19 Caused Physical Loss and/or Damage to Out West's Property and Other Relevant Property**

80.    AFM's All Risk Policy does not require physical presence of COVID-19 at an Insured Location in order to trigger coverage – all that is required is the property's loss of use or loss of functionality for its intended purpose.

81.     COVID-19 in the air at and/or near the insured locations caused an imminent threat to the property which constitutes "loss" and/or "damage."

82.    While the AFM All Risk Policy does not require physical presence of COVID-19 at an Insured Location, Out West is currently aware of over 100 employees testing positive for COVID-19 across numerous of its insured locations.

83.    There may be several more insured locations where customers visiting the insured location to pick-up food for takeout may have tested positive shortly before or after visiting the insured location, unbeknownst to Out West.

84.    These situations, too, trigger coverage as Out West suffers physical loss and/or damage as a result.

85.    Out West undertakes full deep cleaning and sanitation procedures immediately after it becomes aware of a positive test or positive exposure to COVID-19, and additionally undertakes significant efforts to prevent the presence of COVID-19 onsite.

86.    The CDC estimates that infection rates for COVID-19 likely are at least ten times higher than reported,[27] meaning that COVID-19 is omnipresent, particularly

---

[26] *See generally*, Leah F. Moriarty, *et al.*, *Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020*, CDC (Mar. 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm?s_cid=mm6912e3_w (last visited Sept. 29, 2020).

[27] Erika Edwards, *CDC says COVID-19 cases in U.S. may be 10 times higher than reported*, NBC News (June 25, 2020), https://www.nbcnews.com/health/health-news/cdc-says-covid-

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

in Arizona and California – states where 70% of Out West's restaurants are located.

87.     There may be instances where COVID-19 was present onsite at an insured location, including with respect to a customer, but the individual was pre-symptomatic, such that Out West was not aware of the presence of the virus.

88.     During the incubation period, or "pre-symptomatic" period, infected persons can be contagious, and disease transmission can occur before the infected person shows any symptoms or has any reason to believe he or she has become infected. [28] Thus, COVID-19 can be onsite at an insured location even if the infected person is not showing symptoms of infection.

89.     For the reasons discussed *supra*, the presence of COVID-19 at Out West's insured locations, including on surfaces, and/or other properties causes physical alteration of the integrity of the property, causing physical loss and/or damage.

90.     For the reasons discussed *supra*, the presence of COVID-19 in the air at Out West's insured locations and/or other properties caused physical loss and/or damage, including, but not limited to, by rendering the locations unusable, uninhabitable and/or unsuitable for the property's intended purpose.

91.     For the reasons discussed *supra*, the presence of COVID-19 and damage to property at and/or within five miles of Out West insured locations led to the enactment of governmental orders which prevented access to Out West's insured locations and directly caused Out West to incur loss and/or damage.

92.     COVID-19 and Governmental Orders issued as a result thereof, have caused physical loss of and/or damage to Out West's property by impairing the "value, usefulness, or normal function of" Out West's premises, rendering them

---

19-cases-u-s-may-be-10-n1232134 (last visited Sept. 29, 2020).

[28] WHO, *Coronavirus disease 2019 (COVID-19) Situation Report – 73* (Apr. 2, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2 (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

15

unusable and/or unfit for their normal business operations until such time as the relevant governmental agencies determine it is safe to reopen, and otherwise by damaging Out West's property. Out West has suffered covered financial loss as a result.

93.     Specifically, unless and until the relevant governmental agencies determine it is safe and permit it to fully reopen, Out West cannot resume its normal operations because, in light of the factors alleged above, there is a near certainty and/or imminence that COVID-19 will spread and/or further spread at such locations.

94.     Out West's loss of use of its property and/or damage to its property, due to COVID-19 is "physical" because Out West has been deprived of the use and function of its buildings, land on which the buildings are located, and the immovable objects within these buildings (all of which are physical) and/or because the virus itself is physical.

95.     In addition, property loss or damage caused by COVID-19 caused Out West to suspend all use of its dining rooms – the mainstay of its business – and restricted Out West's services to carry out and delivery at all locations for several months.

96.     Further, the Policy requires Out West to take reasonable actions to mitigate its losses, a requirement which, in conjunction with COVID-19, the Pandemic and/or the Governmental Orders, caused Out West to limit its operations at its restaurants to delivery and takeout.  These services replaced a small portion of the revenues lost from the suspension of in-restaurant dining and these circumstances continue to devastate Out West's gross earnings and gross profits.

97.     Out West has incurred covered losses as a direct result of physical loss and/or damage of the type insured.

F.     **Additional Applicable Coverages**

98.     Coverage also is afforded under at least the following coverage grants: (1) where infected persons are or have been on-site an insured location such that

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COVID-19 causes physical loss and/or damage to the insured location; (2) where infected persons are, and/or physical loss and/or damage due to COVID-19 occurs, at third-party properties so as to impact the insured's ingress or egress, supply chain, or "attraction properties"; and/or (3) where infected persons are and/or physical loss and/or damage occurs resulting in an order of a civil or military authority that impacts the insured's business.

99.    Additionally, Out West has suffered covered loss and/or damage due to COVID-19 under various additional coverage grants in the Policy.  These additional relevant coverage sections include but are not limited to those identified below:

### 1.   *Communicable Disease Coverage*

100.   The Policy provides, in addition to, and not in lieu of, the other coverages in the Policy, a Communicable Disease – Property Damage coverage grant and a Communicable Disease – Business Interruption coverage grant.  Both coverage grants apply when a Communicable Disease has caused property damage to one of Out West's insured locations due to:  (a) the actual, not suspected, presence of Communicable Disease on-site at that insured location owned, rented by, or leased to Out West; ***and*** (b) access to the location is limited, restricted or prohibited by a government order regulating the presence of the Communicable Disease or an officer of Out West limits access; ***and*** (c) the access is prohibited for at least 48-hours.

101.   The Policy does **not** limit coverage for loss and/or damage to COVID-19 to only the Communicable Disease – Property Coverage and Communicable Disease – Business Interruption coverages.

102.   Unlike other policies issued by AFM's parent company, FM Global, the Communicable Disease coverages here **do not** say that the sublimits provided for the Communicable Disease – Property Damage and Communicable Disease – Business Interruption coverages are the only amounts that the insurer will pay with respect to interruption by a Communicable Disease.

103.   FM Global offers other the "Global Advantage" All Risk policy form –

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

not used here – which expressly limits the policyholder's ability to claim losses due to Communicable Disease under multiple coverage grants. That form states in the Declarations that "[t]he Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage [Communicable Disease Response] combined shall not exceed USD [insert appropriate limit] in the aggregate during any policy year regardless of the number of locations, coverages or occurrences involved."

104. The Policy does not contain this or any other limitation as to what coverage grants may be triggered by loss and/or damage caused by Communicable Disease. Thus, where COVID-19 causes loss and/or damage that triggers other coverage sections in the Policy, those coverage sections apply, too.

105. Alternatively, if as AFM suggests, coverage for losses incurred as a result of physical loss and/or property damage due to COVID-19 at Out West's insured locations is limited to the Communicable Disease coverages only, the Communicable Disease Coverages are ambiguous and must be interpreted against the drafter, AFM.

106. Alternatively, even if coverage for business interruption loss due to *property damage* from COVID-19 at insured locations is limited to the Communicable Disease coverages, the Communicable Disease coverages do not limit coverage for business interruption loss incurred as a result of *physical loss* due to COVID-19 at insured locations.

### 2.    *Protection and Preservation of Property – Property Damage*

107. The Policy provides Protection and Preservation of Property – Property Damage Coverage, which covers the reasonable and necessary costs incurred for, in relevant part, actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property. (Ex. A at COMPLAINT-00035-36.)

108. Out West has triggered the Protection and Preservation of Property – Property Damage coverage because Out West has incurred and continues to incur

reasonable and necessary costs for actions to temporarily protect or preserve insured property due to actual, and/or to prevent imminent insured physical loss or damage to such insured property caused by COVID-19.

### 3. *Business Interruption*

109. The Policy insures Business Interruption loss as a direct result of physical loss or damage of the type insured to property, described in and not otherwise excluded by the Policy, used by Out West while at a location or while in transit, during the Period of Liability identified in the Policy.

110. COVID-19 has caused physical loss or damage of the type insured to Out West's property so as to trigger the Business Interruption coverage.

### 4. *Extra Expense*

111. As a result of physical loss of, or damage to Out West's property, due to COVID-19, Out West has triggered Extra Expense Coverage under the Policy because it has incurred and continues to incur reasonable and necessary Extra Expense to temporarily continue as close to normal the conduct of its business.

112. These expenses include, but are not limited to expenses for paper menus and other single use products, increased disinfection and cleaning costs, expenses related to "touch free" operations, and personal protective equipment for employees. In addition, Out West initiated tent operations in at least fifteen locations, incurring additional cost of purchasing, erecting and lighting the tents, and the cost of tables, chairs, and associated food serving, handling and warming equipment.

### 5. *Attraction Property*

113. The Policy covers the Business Interruption Coverage loss incurred by Out West directly resulting from physical loss or damage of the type insured to property that attracts business to one of Out West's insured locations and is within one (1) statute mile of the insured location. (Ex. A at COMPLAINT-00045.)

114. COVID-19 has triggered Attraction Property Coverage under the Policy because Out West has incurred and continues to incur Business Interruption Coverage

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COMPLAINT AND DEMAND FOR JURY TRIAL

loss directly resulting from physical loss or damage from COVID-19 to property of the type insured that attracts business to Out West locations and is within one (1) statute mile of Out West locations.

115.   For example:

a.   Anaheim, California: Disney theme park, one mile from one of Out West's insured locations was closed for months and reportedly continues to find employees testing positive for COVID-19.[29]

b.   Las Vegas, Nevada: Wynn Resorts, less than one mile from Out West's insured location, tallied 548 positive tests for COVID-19 and three deaths among its employees as of September 17, 2020.[30]

c.   Santa Fe, New Mexico: A Santa Fe municipal court that is less than one-mile from Out West's insured location shut down for two weeks due to an employee testing positive for COVID-19.[31]

d.   Albuquerque, New Mexico: A state motor vehicles division office that is within one-mile from Out West's insured location shut down due to an employee testing positive for COVID-19.[32]

e.   Colorado Springs, Colorado: The Colorado Department of Public Health

---

[29] Graeme Guttmann, *Disney World Reportedly Allowing COVID-Positive Employees To Work*, ScreenRant (Sept. 7, 2020), https://screenrant.com/disney-world-coronavirus-posiitive-workers-cover-up/ (last visited Sept. 29, 2020).

[30] Associated Press, *Vegas Resort Tallies 548 COVID-19 Positives, 3 Worker Deaths* (Sept. 17, 2020), https://www.usnews.com/news/best-states/nevada/articles/2020-09-17/vegas-resort-tallies-548-positive-covid-19-tests-in-workers (last visited Sept. 29, 2020).

[31] Robert Nott, *Santa Fe Municipal Court closes for 2 weeks after worker tests positive for virus*, SANTA FE NEW MEXICAN (July 28, 2020), https://www.santafenewmexican.com/news/local_news/santa-fe-municipal-court-closes-for-2-weeks-after-worker-tests-positive-for-virus/article_75152ada-d0e5-11ea-846e-37b08729ce60.html (last visited Sept. 29, 2020).

[32] Press Release, *MVD office closed after employee tests positive for COVID-19*, The State of New Mexico (July 9, 2020), https://www.newmexico.gov/2020/07/09/mvd-office-closed-after-employee-tests-positive-for-covid-19/ (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

20

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

& Environment confirms that a Colorado State Patrol Office less than one mile from Out West's insured location experienced an "outbreak" of COVID-19.[33] Additionally, a local manufacturing company, Electronic Metal Finishing, located one mile from Out West's insured location experienced an "outbreak" of COVID-19.[34]

f.   Castle Rock, Colorado: The Douglas County Jail, approximately one mile from Out West's insured location closed to visitors, including attorneys, after an outbreak of COVID-19 at the jail.[35] The jail is located in the Douglas County Justice Center, which also largely closed to visitors other than for "public safety matters" and halted most in-person hearings and all jury trials for several months as a result of COVID-19.[36]

g.   Tucson, Arizona: Tucson Medical Center is located less than one mile from Out West's insured location, where patients are treated for COVID-19 and where at least one nurse has tested positive for COVID-19.[37]

### 6.   *Civil or Military Authority*

116.   The Policy covers the Business Interruption Coverage loss incurred by

---

[33] *Colorado COVID-19 Outbreak Map*, Colorado Dep't Public Health & Environment (last updated Sept. 23, 2020), https://cdphe.maps.arcgis.com/apps/SimpleViewer/index.html?appid=8f375dc9b2b64a45b65b9f36b6e8c8f4 (last visited Sept. 29, 2020).

[34] *Id.*

[35] Elliott Wenzler, *Douglas County Jail Protocol Pushes Back Against COVID-19*, HIGHLANDS RANCH HERALD (May 20, 2020), https://highlandsranchherald.net/stories/jail-protocol-pushes-back-against-covid-19,299719 (last visited Sept. 29, 2020).

[36] Second Amended Chief Judge Order 20-03 (Mar. 27, 2020), Eighteenth Judicial District: Arapahoe, Douglas, Elbert and Lincoln Counties, Colorado, available at https://www.da18.org/wp-content/uploads/SECOND-AMENDED-CJO-20-03-COVID-19-Courthouse-Operations.pdf (last visited Sept. 29, 2020).

[37] Hannah Tiede, *Tucson Medical Center nurse tests positive for COVID-19, isolates at home*, KOLD (Mar. 26, 2020), https://www.kold.com/2020/03/27/tucson-medical-center-nurse-tests-positive-covid-isolates-home/ (last visited Sept. 29, 2020).

Out West if an order of civil or military authority prohibits access to an insured location provided such order is the direct result of physical damage of the type insured at a location or within five (5) miles of it. (Ex. A at COMPLAINT-00045.)

117.   Out West has triggered Civil or Military Authority Coverage under the Policy because Out West has incurred and continues to incur Business Interruption Coverage loss due to numerous governmental orders that prohibit at least partial, if not full, access to Out West's insured locations.

118.   These governmental orders were issued as a result of physical damage to property within five miles of an Out West location.

119.   For example, the Solano County (California) Order of Health Officer No. 2020-04, issued on March 30, 2020, limited restaurants, including Out West, to delivery and take-out, stating "this Order is given because of the propensity of the virus to spread person to person and also because *the virus physically is causing property loss or damage due to its proclivity to attach to surfaces*."

120.   These governmental orders include, but are not limited to those set forth in the attached Exhibit D.

### 7.   *Ingress/Egress*

121.   The Policy covers the Business Interruption Coverage loss incurred by Out West due to the necessary interruption of Out West's business when ingress to or egress from an insured location is physically prevented, either partially or totally, as a direct result of physical loss or damage of the type insured to property of the type insured whether or not at a described location. (Ex. A at COMPLAINT-00048.)

122.   Out West has triggered Ingress/Egress Coverage under the Policy because Out West has incurred and continues to incur Business Interruption Coverage loss due to the necessary interruption of Out West's business because ingress to and/or egress from certain Out West locations is physically prevented, either partially or totally, as a direct result of physical loss or damage from COVID-19.

123.   For example: The Outback Steakhouse located inside the Aquarius

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1   Casino Resort in Laughlin, Nevada was closed from March 18, 2020 to June 6, 2020,

2   and the Outback Steakhouse located inside the Best Western Casino Royale was

3   closed from March 18, 2020 to June 6, 2020, both, due to the hotels' and casinos'

4   shutdown due to COVID-19.  In addition, the Outback Steakhouse located on Las

5   Vegas Boulevard, was closed from March 18, 2020 to June 8, 2020 because the hotels

6   and casinos in the area were closed, and delivery drivers and guests would not go to

7   Las Vegas Blvd. to pick up food during the pandemic.

8                    **8.    *Supply Chain***

9        124.   The Policy covers the Business Interruption Coverage loss incurred by

10   Out West directly resulting from physical loss or damage of the type insured to

11   property of the type insured at the premises of any of the following within the Policy's

12   Territory: (a) Out West's direct suppliers, direct customers or direct contract service

13   providers; (b) any company under any royalty, licensing fee or commission agreement

14   with Out West; or (c) any company that is a direct or indirect supplier, customer or

15   contract service provider of those described in (a) above. (Ex. A at COMPLAINT-

16   00052.)

17        125.   Out West has triggered Supply Chain Coverage under the Policy because

18   Out West has incurred and continues to incur Business Interruption Coverage loss

19   directly resulting from physical loss or damage from COVID-19 to property of the

20   type insured at the premises of: (a) Out West's direct suppliers, direct customers or

21   direct contract service providers; (b) companies under any royalty, licensing fee or

22   commission agreement with Out West; and/or (c) companies that are a direct or

23   indirect supplier, customer or contract service provider of those described in (a)

24   above.

25        126.   As more facts develop and COVID-19 continues to impact Out West,

26   additional coverages set forth in the Policy may be triggered.

27                    **9.    *Professional Fees Coverage***

28        127.   The Policy provides coverage for the reasonable and necessary expenses

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

incurred by Out West for auditors, accountants, other professionals, and the Insured's own employees for producing and certifying details to determine the amount of loss payable under the Policy for which this Company has accepted liability.

128.   In this action, Out West seeks a determination of coverage so that this coverage will be triggered and its relevant costs insured.

**G.    No Exclusion in the Policy Precludes or Limits Coverage for Out West's Losses due to COVID-19**

129.   No exclusions in the Policy preclude or limit coverage, in whole or in part, for Out West's claimed losses.

130.   Specifically, the Policy's Contamination Exclusion does not preclude or limit coverage, in whole or in part, for Out West's claim.

131.   First, the contamination exclusion does not apply to "Additional Coverages" set forth in the "All Risks" coverage form or to the "Business Interruption" coverage form or "Business Interruption Coverage Extensions" set forth therein.  Thus, it does not apply to any of the coverage grants specifically addressed in this Complaint and for which Out West seeks coverage under.

132.   Second, the Contamination Exclusion does not and was never meant to apply to "Communicable Disease" such as COVID-19.

133.    Indeed, the Contamination Exclusion directly conflicts with the Policy's affirmative coverage grant for Communicable Disease.  If the contamination exclusion did apply to a "Communicable Disease" like COVID-19 as AFM suggests, the exclusion would swallow the Communicable Disease coverages whole since neither the Communicable Disease coverage parts nor the contamination exclusion contain a carve-out stating that the exclusion does not apply to the Communicable Disease coverages.

134.   Thus, the references to "pathogen or pathogenic organism", "virus", or "disease causing or illness causing agent," as used in the definition of "contamination," cannot include a "Communicable Disease."

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

135. To the extent AFM intended the Policy's Contamination Exclusion to apply to communicable diseases such as COVID-19, for which coverage expressly is provided in the Policy, AFM could have included, but did not include Communicable Disease in the Policy's definition of contaminant and/or contamination.

136. Further, even if COVID-19 could cause "contamination," as AFM has represented to insurance regulators, "[t]he policy covers all risks, and damage arising from contamination . . . is covered when it directly results from insured physical damage."[38]

137. Thus, because the Policy's Contamination Exclusion does not exclude coverage for communicable disease, it clearly and unambiguously does not preclude coverage for Out West's claimed losses due to COVID-19.

138. Even if application of the Contamination Exclusion to COVID-19 was unclear (it is clear and does not apply), the exclusion is ambiguous, and such ambiguity must be construed in favor of coverage.

139. Third, pursuant to the doctrine of *ejusdem generis*, general words appearing in a series with words of a particular and specific meaning must be construed narrowly to apply to persons and things of the same general kind or class as those specifically mentioned. Thus, the words "virus" and "disease or illness causing agent" in the Contamination Exclusion must be construed as applying to circumstances similar to those that would apply with respect to the other words in the series, such as disease causing fungus, mold, or mildew, or a similar "pollutant."

## H. AFM's Breach of Good Faith and Fair Dealing

140. AFM's failure to diligently pursue a thorough, fair, and objective investigation of Out West's claim and its improper denial of coverage constitute a breach of the covenant of good faith and fair dealing that is implied in every insurance policy.

---

[38] Affiliated FM Insurance Company, Product AFM-2016-3, Ex. F at COMPLAINT-00119, 00121 (New York, filed Aug. 18, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

141.   AFM's denial of coverage misstates the terms of the Policy and fails to adequately address the multiple coverages to which Out West is entitled under the Policy for its claim, as alleged in this Complaint.

142.   AFM's bad faith denial of coverage for Out West's claim, in direct contradiction to the Policy's plain and unambiguous terms, is evident from the circumstance that AFM acknowledged that COVID-19 constitutes a Communicable Disease as defined in the Policy.  AFM nevertheless maintains that COVID-19 also falls within the Contamination Exclusion, which does not define contamination to include a communicable disease such as COVID-19, for purposes of all other coverages under the Policy.

143.   Further, AFM demanded additional information to investigate the loss, after such information was already provided to it.

144.   AFM's conduct as respects Out West is consistent with and part of an orchestrated campaign that AFM has engaged in throughout the country, misrepresenting policy terms and making burdensome information requests to innumerable other AFM policyholders, with the objective of dissuading them from pursuing covered insurance claims.

145.   Out West learned after submission of its claim that AFM had already adopted a company-wide position on coverage for COVID-19 claims, and issued guidelines to all of its claims handlers across the company to ensure that AFM's adjusters reached the same conclusion for all COVID-19 claims.  Claims personnel are instructed to follow the AFM Talking Points (Ex. B), without regard to any individual investigation of each individual claim.  Thus, AFM instructed all of its claims personnel to blanket deny coverage under several pertinent coverage grants regardless of what the claims handler's investigation revealed.

146.   By issuing a blanket directive to all of its claims personnel on what portions of every COVID-19 claim to accept and/or deny, the AFM Talking Points ensure that its claims personnel do not undertake any proper or independent

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1    investigation of the claim to arrive at an independent coverage determination.

2        147.    Further, the AFM Talking Points were issued even before Out West

3    procured the Policy.  Thus, AFM accepted Out West's premium payment after

4    determining it would deny coverage for any resulting COVID-19 claim and without

5    including a COVID-19 or pandemic exclusion to make clear to Out West that AFM

6    did not intend to cover potential losses.

7        148.    Further, Out West's conduct in this claim contradicts even its own

8    internal procedures.  AFM's "Talking Points on the 2019 Novel Coronavirus," which

9    were sent to all of its claims personnel as instructions for handling COVID-19 claims,

10    state that "yes," "an employee at a location who is affected with the communicable

11    disease [shall] be considered the 'actual presence' of a communicable disease" are

12    sufficient to trigger at least the Policy's communicable disease coverages.  Despite

13    Out West advising AFM that employees had tested positive for COVID-19, AFM

14    asked Out West whether the *property itself* had been tested for COVID-19 and for Out

15    West to provide testing reports of same.

16        149.    This conduct conflicts with AFM's representations to its customers,

17    including that it is "recognized across the industry, as second to none in paying claims

18    promptly, fairly and professionally."[39]

19        150.    The premium that AFM charged for the Policy was based, in significant

20    part, on the size of the properties and operations on such properties that the Policy was

21    intended to insure.

22        151.    Out West had a reasonable expectation that loss of use of any portion of a

23    location (*e.g.*, in-restaurant dining), would be covered even if Out West undertook

24    other actions (*e.g.*, take out services) to mitigate its losses and therefore the magnitude

25    of its claim.

26        152.    By misconstruing the terms of the Policy to exclude any coverage for Out

27

28    [39] *Why AFM: Client Benefits, Affiliated FM Insurance*,
      https://www.affiliatedfm.com/about/why-afm (last visited Sept. 29, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

West's claim, AFM seeks to be unjustly enriched by the premium it charged for property that is uninhabitable and/or unusable for its intended purpose, but for which AFM denies coverage.

153.   AFM's actions throughout the history of this claim were unreasonable and designed with the sole intent and purpose of denying Out West's claim, no matter what AFM's investigation uncovered.  This constitutes bad faith.

154.   AFM's bad faith conduct as described herein and otherwise as the facts will show also violates California insurance laws and regulations.

155.   California Insurance Code §790.03(h) provides that it constitutes unfair methods of competition, and unfair and deceptive acts or practices, in the business of insurance to knowingly commit or perform with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

> (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.
>
> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
>
> (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.
>
> . . .
>
> (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
>
> (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.
>
> . . .
>
> (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

156.    The California Fair Claims Settlement Practices Regulations states in §2695.7(b)(1) that, "Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge.  Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim."

157.    Additionally, on April 14, 2020, California Insurance Commissioner Ricardo Lara issued the notice, titled "Requirement to Accept, Forward, Acknowledge, and Fairly Investigate All Business Interruption Insurance Claims Caused by the COVID-19 Pandemic" (the "Department of Insurance Notice").  A true copy of the Notice is attached as Exhibit E.

158.    The Department of Insurance Notice acknowledges that to help combat the spread of COVID-19, government officials have issued emergency public health orders and "shelter-in-place" directives, and that the COVID-19 pandemic "has severely curtailed activities of policyholders in both personal and commercial lines, causing significant and widespread economic loss in California."  The Notice states, among other things, that after receipt of a notice of claim "every insurer is required to conduct and diligently pursue a thorough, fair, and objective investigation of the reported claim, and is prohibited from seeking information not reasonably required for

COMPLAINT AND DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

or material to the resolution of a claim dispute before determining whether the claim will be accepted or denied, in whole or in part. (Regulations, section 2695.7(d).)" (*Id.* at COMPLAINT-00103.)

159.  AFM's failure to diligently pursue a thorough, fair, and objective investigation of Out West's claim and improper denial of coverage constitutes a violation of the California common law principles of good faith, California Insurance Code and the UCI which are implied in insurance contracts.

## CAUSES OF ACTION
### COUNT I
### Declaratory Judgment

160.  Out West repeats and realleges the allegations in the preceding paragraphs.

161.  Out West seeks a declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. §2201.  A justiciable controversy exists between Out West and AFM concerning the availability of coverage under the Policy for Out West's claim.

162.  The controversy between Out West and AFM is ripe for judicial review.

163.  Accordingly, Out West seeks a declaration from the Court that:

(1)  Each coverage provision identified herein is triggered by Out West's claim;

(2)  No exclusion in the Policy applies to bar or limit coverage for Out West's claim;

(3)  The Policy covers Out West's claim;

(4)  AFM violated the implied covenant of good faith and fair dealing; and

(5)  Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

### COUNT II
### Breach of Contract

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

164.   Out West repeats and realleges the allegations in the preceding paragraphs.

165.   The Policy is a valid and enforceable contract between Out West and AFM.

166.   Out West has sustained covered loss under the Policy and, accordingly, submitted its claim to AFM.

167.   AFM has wrongfully refused to provide coverage for Out West's claim in breach of the Policy.

168.   As set forth above, the Policy provides coverage for Out West's losses.

169.   No exclusions apply to preclude or limit coverage.

170.   Out West has fully complied with all of the terms and conditions of the Policy and has satisfied any and all conditions precedent to coverage under the Policy, including but not limited to paying premiums, providing timely notice of the claim, taking all reasonable steps to protect the property from further damage.

171.   To the extent Out West has not complied with a condition in the Policy, it is because the condition does not apply or has been waived by AFM.

172.   AFM's failure to pay amounts due and its actions in handling Out West's claim under the Policy constitutes a breach of contract.

173.   In consequence of AFM's breach of contract, Out West has suffered and continues to suffer significant damages.

174.   Out West is entitled to coverage up to the Policy's limit of liability or any applicable sublimits.

175.   Out West is entitled to damages as a result of AFM's breach of contract in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT III
## Breach of the Implied Covenant of Good Faith and Fair Dealing

176.   Out West repeats and realleges the allegations in the preceding

1  paragraphs.

2       177.   Out West has suffered loss covered under the Policy.

3       178.   Out West properly presented its claim to AFM to be compensated for its

4  losses.

5       179.   AFM failed to conduct a full, fair, prompt, and thorough investigation of

6  all of the bases of Out West's claim.

7       180.   When investigating Out West's claim, AFM had a duty to diligently

8  search for and consider evidence that supported coverage for the claimed loss.

9       181.   In connection with its efforts to sell the Policy, AFM represented that it

10  would evaluate claims on a good faith basis consistent with the plain language of the

11  Policy and pursuant to the law governing the interpretation of that Policy.

12       182.   Instead of doing what it represented it would do, AFM implemented a

13  claims handling practice that was intended to deprive Out West of the coverage that

14  AFM was contractually required to provide under the Policy.

15       183.   Rather than pay Out West's claim, and without even investigating it,

16  AFM refused to acknowledge coverage and refused to pay Out West's losses.

17       184.   AFM's improper claims handling practices include the following ongoing

18  misconduct at the expense of its insured: (i) failing to diligently pursue a thorough,

19  fair, and objective investigation of Out West's claim; (ii) improperly denying

20  coverage based on its position that there was no direct physical loss of or damage to

21  property, which is incorrect; and (iii) improperly asserting that the Contamination

22  Exclusion bars coverage for Out West's claimed losses due to COVID-19, where such

23  exclusion clearly and unambiguously does not exclude coverage for a communicable

24  disease such as COVID-19 and where such exclusion directly contradicts affirmative

25  coverage grants in the Policy and contradicts AFM's own representations to the public

26  and to various insurance regulators.

27       185.   In handling Out West's claim under the Policy, AFM has failed to

28  faithfully apply the language of the Policy that it drafted, ignored longstanding

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COMPLAINT AND DEMAND FOR JURY TRIAL

principles of California insurance law, failed to conduct a reasonable investigation, and failed to consider the facts relevant to the claim against the language of the Policy as interpreted pursuant to California law.

186.   AFM's conduct, including its practice of avoiding its obligations under the Policy at the expense of Out West, is <u>unlawful</u> because, as discussed *supra*, such conduct violated and continues to violate California common law principles of good faith, which are implied in every insurance contract, which has caused Out West to incur substantial losses that should have been paid by AFM under the Policy.

187.   AFM's conduct is <u>unfair</u> because it offends the established California public policies that require an insurer to act in good faith in dealings with its insured; to treat the interests of its insured as it would its own; to diligently pursue a thorough, fair, and objective investigation of claims; to construe ambiguous policy terms in favor of coverage; to construe the grants of coverage broadly in favor of coverage and exclusions or other limiting terms narrowly; to not unreasonably delay in providing insurance benefits under a policy; and to not place its own interests above the insured's.  Additionally, or alternatively, AFM's conduct is <u>unfair</u> because it is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

188.   Out West has been harmed by AFM's conduct.

189.   AFM's failure to properly investigate Out West's claim was a substantial factor in causing Out West's harm.

190.   For the reasons set forth above, AFM's withholding of the benefits due is unreasonable and constitutes bad faith.

191.   AFM's wrongful conduct, including, but not limited to, its denial of coverage was unreasonable based on the information available to AFM at the time of such conduct.

192.   Due to AFM's conduct, Out West has suffered and continues to suffer an ascertainable loss, and Out West will continue to incur reasonable attorneys' fees in

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1   order to enforce its rights.

2       193.   AFM's unlawful and bad faith conduct was a substantial factor in causing

3   Out West's losses.

4       194.   Due to AFM's conduct, Out West was forced to retain the services of the

5   undersigned to vindicate Out West's rights and pursue coverage owed under the

6   Policy and is entitled to attorneys' fees pursuant to *Brandt v. Superior Court.*, 37 Cal.

7   3d 813 (1985) and otherwise to the extent permissible under the law.

8                                    **PRAYER FOR RELIEF**

9       **Wherefore**, Out West prays for judgment against AFM as follows:

10      (1)    A declaration from the Court that:

11             (a)   Each of the coverage provisions identified herein is triggered by Out

12                   West's claim;

13             (b)   No exclusion under the Policy applies to bar or limit coverage for

14                   Out West's claim;

15             (c)   The Policy covers Out West's claim;

16             (d)   AFM breached the implied covenant of good faith and fair dealing;

17                   and

18             (e)   Any other declaratory relief that would be useful to the resolution of

19                   the dispute between the parties;

20      (2)    For special and consequential damages against AFM in an amount to be

21             proved at trial in excess of $75,000;

22      (3)    For punitive and exemplary damages as provided by law;

23      (4)    Pre- and post-judgment interest as provided by law;

24      (5)    An award of attorney's fees and costs of suit incurred;

25      (6)    For such other and further relief as the Court deems just and proper.

26                                **DEMAND FOR JURY TRIAL**

27      Out West demands trial by jury on all issues so triable.

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

DATED:  September 29, 2020

HUNTON ANDREWS KURTH LLP

By:  /s/ Scott P. DeVries
Scott P. DeVries
Walter J. Andrews
Andrea DeField
Michael L. Huggins

*Attorneys for Plaintiffs*
*Out West Restaurant Group Inc.; Cerca*
*Trova Restaurant Group, Inc.;*
*Cerca Trova Steakhouse, L.P.; and*
*Cerca Trova Southwest Restaurant*
*Group, LLC*

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COMPLAINT AND DEMAND FOR JURY TRIAL