UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUT WEST RESTAURANT GROUP INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-06786-TSH<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 26 |

## I.   INTRODUCTION

Plaintiffs Out West Restaurant Group, Inc., Cerca Trova Restaurant Group, Inc., Cerca Trova Steakhouse, LP., and Cerca Trova Southwest Restaurant Group, LLC ("Plaintiffs") bring this action against Affiliated FM Insurance Company ("AFM"), seeking coverage for economic losses to their restaurant businesses caused by COVID-19.  Pending before the Court is AFM's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF No. 26.  Plaintiffs filed an Opposition (ECF No. 29) and AFM filed a Reply (ECF No. 34).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 25, 2021 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** AFM's motion for the following reasons.

## II.   BACKGROUND

**A.   Factual Background**

Plaintiff Out West Restaurant Group, Inc. is a restaurant management company.  First Am. Compl. ("FAC") ¶ 9, ECF No. 18.  It is the exclusive franchisee of Outback Steakhouse

1  restaurants in Arizona, Colorado, Nevada, and New Mexico and the predominate franchisee in
2  California. *Id.* Plaintiff Cerca Trova Steakhouse is an entity that holds leases for all California
3  restaurants, while Plaintiff Cerca Trova Southwest Restaurant Group is an entity that holds leases
4  for the non-California restaurants. *Id.* ¶¶ 10-11. Plaintiff Cerca Trova Restaurant Group, Inc.
5  owns the other Plaintiffs and is the "ultimate parent of the Out West entities." *Id.* ¶¶ 12, 34. AFM
6  is an insurance company. *Id.* ¶¶ 13, 27. Cerca Trova purchased an insurance policy (the "Policy")
7  from AFM which insures Cerca Trova along with its subsidiaries. *Id.* ¶¶ 27, 33-34; *id.*, Ex. A
8  (Policy). The Policy had an effective date of February 15 through December 1, 2020 and provides
9  coverage for "all risks of physical loss or damage" except as excluded by the Policy. *Id.* ¶¶ 28, 31;
10 Policy at COMPLAINT-00022.

11 Plaintiff alleges the COVID-19 pandemic and presence of the virus in the air makes
12 restaurant properties with outdoor or indoor dining spaces unusable and unfit for normal
13 occupancy. FAC ¶ 90. The presence of the virus at Out West's locations, including on surfaces,
14 also causes physical alteration of the integrity of the property and causes physical loss. *Id.* ¶ 89.
15 According to Plaintiffs, these conditions constitute "loss" and "damage" under the Policy. *Id.* ¶¶
16 80-81.

17 **B.     Procedural Background**

18 Plaintiffs filed their initial complaint on September 29, 2020. ECF No. 1. AFM moved to
19 dismiss, arguing that Plaintiffs' complaint violated Federal Rule of Civil Procedure 8 because it
20 was needlessly long and "impermissibly contains numerous examples of immaterial, impertinent,
21 and redundant matters, repetitive allegations," improper legal arguments and "needless citations to
22 'evidence'. . . ." Mot. to Dismiss, ECF No. 13. The Court found Plaintiffs' complaint complied
23 with Rule 8 but their extensive use of footnotes did not comport with the requirements of Rule
24 10(b), which directs that "[a] party must state its claims or defenses in numbered paragraphs, each
25 limited as far as practicable to a single set of circumstances." Order, ECF No. 17. The Court
26 dismissed with leave to amend for Plaintiffs to remove the footnotes from the Complaint.

27 On December 8, 2020, Plaintiffs filed the operative FAC for declaratory relief, breach of
28 contract, and breach of implied covenant of good faith and fair dealing, alleging that (1) the

1  presence of COVID-19 "on surfaces" and "in the air" at Plaintiffs' restaurant locations caused
2  physical loss or damage to their property, and (2) the "Governmental Orders issued as a result [of
3  COVID-19] caused physical loss of and/or damage" to Plaintiffs in that they have deprived them
4  of the use and function of their buildings.  FAC ¶¶ 2, 89-94.

5        Plaintiffs allege that they are "currently aware of over 100 employees testing positive for
6  COVID-19 across numerous of its insured locations"; "[t]hat there may be several more insured
7  locations where customers visiting the insured location to pick-up food for takeout may have
8  tested positive shortly before or after visiting the insured location, unbeknownst to [Plaintiffs]";
9  and that "these situations, too, trigger coverage as [Plaintiffs] suffer[] physical loss and/or damage
10 as a result."  FAC ¶¶ 82-84, ¶¶ 87-88.  They state they undertake "full deep cleaning and
11 sanitation procedures immediately after [they] become[] aware of a positive test or positive
12 exposure to COVID-19, and additionally undertake[] significant effort to prevent the presence of
13 COVID-19 onsite."  *Id.* ¶ 85.  Plaintiffs allege that the presence of COVID-19, "including on
14 surfaces, and/or other properties causes physical alteration of the integrity of the property, causing
15 physical loss and/or damage" and that "the presence of COVID-19 in the air at [Plaintiffs'] insured
16 locations and/or properties caused physical loss and/or damage, including but not limited to, by
17 rendering the locations unusable, uninhabitable and/or unsuitable for the property's intended
18 purpose."  *Id.* ¶¶ 89-90.  They also claim that "COVID-19 and Governmental Orders issued as a
19 result thereof, have caused physical loss of and/or damage to [Plaintiffs'] property by impairing
20 the 'value, usefulness, or normal function' of [Plaintiffs'] premises, rendering them unusable
21 and/or unfit for their normal business operations until such time as the relevant governmental
22 agencies determine it is safe to reopen, and otherwise by damaging [Plaintiffs'] property."  *Id.* ¶¶
23 92-93.

24       Plaintiffs allege AFM's failure to diligently pursue a thorough, fair, and objective
25 investigation of their claim and its improper denial of coverage constitute a breach of good faith
26 and fair dealing.  *Id.* ¶ 140.  In addition to their Communicable Disease claims (*id.* ¶¶ 100-06),
27 Plaintiffs seek coverage under the following Policy provisions, each of which in some manner
28 requires physical loss or damage to property: Business Interruption (*id.* ¶ 109, Policy at

1  COMPLAINT-0040); Protection and Preservation of Property – Property Damage (FAC ¶ 107,
2  Policy at COMPLAINT-0035-36); Extra Expense (FAC ¶ 111, Policy at COMPLAINT-0043);
3  Attraction Property (FAC, ¶ 113, Policy at COMPLAINT-0045); Civil or Military Authority (FAC
4  ¶ 116, Policy at COMPLAINT-0045); Ingress/Egress (FAC ¶ 121, Policy at COMPLAINT-0048);
5  and Supply Chain (FAC ¶ 124, Policy at COMPLAINT-0052), along with Professional Fees
6  associated with these coverages (FAC ¶ 127, Policy at COMPLAINT-0035 (referring to "payable
7  amounts . . . for which this Company has accepted liability").

8      AFM filed its Answer on December 22, 2020. ECF No. 20.

### III. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *Id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (simplified). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

1    most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d
2    1025, 1031 (9th Cir. 2008).
3          A district court generally may not consider materials outside the pleadings in deciding a
4    motion under Rule 12(c), and if such materials are presented and not excluded, the motion must be
5    treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). A district
6    court may, however, consider the following materials without converting a Rule 12(c) motion to a
7    Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred
8    to in the non-moving party's pleading, or (3) facts that are included in materials that can be
9    judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

## IV.   DISCUSSION

AFM argues the Court must grant judgment on the pleadings because: (1) the AFM policy's contamination and loss of use exclusions bar coverage for Plaintiffs' claims (except as may potentially be allowed under the Communicable Disease coverages); (2) COVID-19 and the associated governmental shut-down orders cannot cause or constitute physical loss or damage under the policy as a matter of law; and (3) Plaintiffs' allegations regarding Communicable Disease coverage fail to state any claim upon which relief can be granted. Mot. at 2.

**A.   Insurance Policy Interpretation**

Under California law, the interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.* In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)). "[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making

5

it, that the promisee understood it." *Bank of the W.*, 2 Cal. 4th at 1264-65 (quoting Cal. Civ. Code § 1649). "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Id.* at 1265. California courts have cautioned that language in a contract "cannot be found to be ambiguous in the abstract," and courts should "not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

**B.     Physical Loss or Damage**

The parties dispute whether Plaintiffs' allegations establish loss and/or damage within the Policy's grant of coverage. AFM argues the presence of COVID-19 does not constitute physical loss or damage because the virus does not cause physical alteration of the property. Mot. at 19. Plaintiffs argue "[t]he presence of COVID-19 constitutes the requisite 'damage' to trigger coverage as that undefined term is reasonably understood, because its physical presence transforms property, specifically indoor air and surfaces, from a safe condition to a dangerous and potentially deadly condition unsafe and unfit for its intended purpose." Opp'n at 7. The parties also dispute whether the Policy bars coverage for any condition of property due to the presence of a virus, with AFM arguing the contamination exclusion bars coverage and Plaintiffs arguing it does not. Mot. at 10-17; Opp'n at 15-24.

Under California law, the insured has the initial burden of proving that its loss is covered. *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 777 (2010). Once the insured has made that showing, the burden is on the insurer to prove the claim is specifically excluded. *Id.* California courts have interpreted "direct physical loss" to require a "distinct, demonstrable, physical alteration of the property" or a "physical change in the condition of the property." *See id.* at 779-800 (simplified). Accordingly, "a detrimental economic impact," such as limited use of property, "unaccompanied by a distinct, demonstrable, physical alteration of the property," is insufficient to claim a "direct physical loss." *Id.* at 779. Where a policy additionally requires "direct physical loss of or physical damage to property," there must either be a physical change in the condition or a permanent dispossession of the property. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("finding that a more expansive interpretation of 'direct physical loss of property' to include dispossession

6

of property would require a 'permanent dispossession.'").

The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage. These decisions have reasoned that the virus fails to cause physical alteration of property because temporary loss of use of property (if any) during a pandemic and while government orders are in effect does not qualify as physical loss or damage. *See e.g., Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute "direct physical loss of or physical damage to" the insured property.") (collecting cases); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 2021 WL 141180, at *3 (N.D. Cal. Jan. 13, 2021) ("Numerous courts have considered whether allegations similar to KBFA's constitute a 'direct physical loss of . . . property, and the overwhelming majority have concluded that temporarily closing a business due to government closure orders during the pandemic does not constitute a direct loss of property under insurance policies with the same coverage provision.") (collecting cases); *Palmdale Est., Inc. v. Blackboard*, 2021 WL 25048 *2 (N.D. Cal., 2021) ("The majority view — including in this district — is that 'direct physical loss' provisions . . . do not cover lost business income or expenses resulting from closure orders. . . "); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) ("'the presence of the virus itself, or of individuals infected with the virus, at [plaintiff's] business premises or elsewhere [does] not constitute direct physical loss of or damage to property.'") (quoting *Pappy's Barber Shops, Inc. v. Farmers*, ___ F. Supp. 3d ___, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("The primary additions to the proposed amended complaint are speculative allegations that the COVID-19 virus, or individuals infected by the virus, likely had entered Plaintiffs' premises at the time of the COVID-19 Civil Authority Orders. Even assuming the truth of these allegations, the presence of the virus itself, or of individuals infected the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property. Moreover, even if they do constitute direct physical

7

1    losses of or damage to property, they were not the cause of the business income losses for which
2    Plaintiffs' seek coverage here.")); *Ba Lax, LLC v. Hartford Fire Ins. Co.*, 2021 WL 144248, at *3
3    (C.D. Cal. Jan. 12, 2021) (collecting cases). Thus, since the Policy requires physical loss or
4    damage, and Plaintiffs' claims do not constitute physical loss or damage as a matter of law,
5    Plaintiffs cannot state a valid claim for relief.

6    Plaintiffs cite *Mudpie* in support of their position that COVID-19 on property would be
7    capable of causing damage to property. Opp'n at 8. It admits that the insured there "had made no
8    such allegation and, thus, there was no coverage," Opp'n at 8, but points to the court's statement
9    in dicta that "[h]ad Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion
10   about an intervening physical force would be different. SARS-CoV-2 — the coronavirus
11   responsible for the COVID-19 pandemic, which is transmitted either through respiratory droplets
12   or through aerosols which can remain suspended in the air for prolonged periods of time – is . . . a
13   'physical force'". *Mudpie*, 2020 WL 5525171, at *5. However, as discussed above, the
14   overwhelming majority of cases issued after *Mudpie* have found otherwise. Further, it is well-
15   settled that "observations, commentary, or mere dicta touching upon issues not formally before the
16   Court do not constitute binding determinations." *Dunbar v. Google, Inc.*, 2012 WL 6202797, at
17   *10 (N. D. Cal., 2012).

18   Plaintiffs also rely on several out-of-state decisions to suggest that mere loss of use or
19   access to property constitutes "direct physical loss of or damage" to property. Opp'n at 8 (citing
20   *Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, 2016 WL 3267247, at *9 (D. Or. June 7, 2016),
21   *vacated*, 2017 WL 1034203 (D. Or. Mar. 6, 2017) (finding property sustained "physical loss or
22   damage" where wildfire smoke made theatre "uninhabitable and unusable"); *Gregory Packaging,*
23   *Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (finding
24   that "ammonia discharge inflicted 'direct physical loss of or damage to" property, where
25   "ammonia physically rendered the facility unusable"). However, courts in this District have
26   rejected similar arguments that loss of use or access constitutes direct physical loss, noting that the
27   cases plaintiffs cited, the same cases that Plaintiffs cite here, "involved an intervening physical
28   force which made the premises uninhabitable or entirely unusable." *Colgan v. Sentinel Ins. Co.,*

1  *Ltd.*, 2021 WL 472964, at *3 (N.D. Cal. Jan. 26, 2021); *Mudpie*, 2020 WL 5525171, at *4.

2  Further, the cases Plaintiffs cite are distinguishable because this case involves a virus,
3  which "can be disinfected and cleaned" from surfaces. *See, e.g., O'Brien*, 2021 WL 105772, at *4
4  (no physical loss or damage because surfaces contaminated with the novel coronavirus "can be
5  disinfected and cleaned") (citing *Mama Jo's, Inc. v. Sparta*, 2018 WL 3412974, *9 (S.D. Fla.,
6  2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020) (presence of construction debris and dust from
7  road work did not constitute physical loss of or damage to covered property; "[t]he fact that the
8  restaurant needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical
9  loss or damage")); *Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *6 ("Even if KBFA had
10 included allegations regarding the virus being present on and damaging the property, they would
11 not be plausible."; citing cases in which there was no coverage because COVID-19 can be
12 disinfected and cleaned from surfaces); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*,
13 2020 WL 7351246, at *7 (W.D. Tex. Dec. 14, 2020) ("Even assuming that the virus that causes
14 COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or
15 damage required to trigger coverage under the Policy because the virus can be eliminated. The
16 virus does not threaten the structures covered by property insurance policies, and can be removed
17 from surfaces with routine cleaning and disinfectant"); *Promotional Headwear Int'l v. Cincinnati*
18 *Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("even assuming that the virus
19 physically attached to covered property, it did not constitute the direct, physical loss or damage
20 required to trigger coverage because its presence can be eliminated. Much like the dust and debris
21 at issue in *Mama Jo's*, routine cleaning and disinfecting can eliminate the virus on surfaces");
22 *Rococo Steak, LLC v. Aspen Spec. Ins. Co.*, 2021 WL 268478, at *4 (M.D. Fla. Jan. 27, 2021)
23 ("like the coating of dust and debris in *Mama Jo's*, the surfaces allegedly contaminated by
24 COVID-19 seem to only require cleaning to fix."). On this point, the Court notes that Plaintiffs
25 admit that COVID-19 can be cleaned, alleging that "Out West undertakes full deep cleaning and
26 sanitation procedures after it becomes aware of a positive test or positive exposure to COVID-19."
27 FAC ¶ 84; *see also id.* ¶ 112 re: claimed disinfection/cleaning costs. Further, the property was not
28 rendered "unusable," as Plaintiffs admit their restaurants remained open for delivery and takeout at

9

all locations, with outdoor dining at some locations. FAC ¶¶ 83, 95-96, 112.[1]

In sum, the Court finds that Plaintiffs have not plausibly alleged "direct physical loss of or damage to" property, as required by the Policy, and their alleged losses are not covered as a matter of law. Because the Court finds that Plaintiffs cannot allege direct physical loss or damage, it need not address the scope of the Policy's virus exemption. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *3, 6 (court determined it did not need to address the virus exclusion in a policy because the plaintiff had failed to allege direct physical loss); *Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, 2020 WL 7350413, at *4 (C.D. Cal. Dec. 3, 2020) ("Because the Court finds that G&G has not suffered any 'direct physical loss of or physical damage to' its property, the Court . . . does not reach the issue of whether the virus exclusion applies."); *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 626-27 (9th Cir. 1996) (If there is no coverage, the inquiry ends as "[t]here is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement."); *Glavinich v. Commonwealth Land Title Ins. Co.*, 163 Cal. App. 3d 263, 270 (1984), *as modified* (Jan. 15, 1985) ("There are literally hundreds of problems that may affect real property . . . and it would be a limitless task for the insurer to specifically enumerate each of them as being excluded from coverage. Coverage is defined in the first instance by the insuring clause, and when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.").

Accordingly, Plaintiffs' claims in this case must be dismissed. However, this Order does not address any pending claims Plaintiffs may have with AFM regarding Communicable Disease coverage under the Policy, as AFM admits those remain under consideration. *See* Mot. at 4 ("Importantly, on April 17, 2020, AFM requested additional information regarding potential Communicable Disease claims identified by Plaintiffs, noting that it had not denied those

---

[1] Plaintiffs also cite to a California state case in which the court held that the presence of asbestos in an insured's building constituted "property damage" that amounted to "physical injury," even though the building was not structurally altered. *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 90 (1996). However, the court specifically found that asbestos-containing building materials are "physically linked with or physically incorporated into the building and therefore physically affect[] tangible property." *Id.* at 91. Again, that contrasts with the nature of COVID-19, which can be disinfected and cleaned.

claims.").

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** AFM's motion for judgment on the pleadings. The Court will not provide leave to amend because, in light of Plaintiffs' allegations regarding COVID-19 and the Policy provisions regarding direct physical loss of property, doing so would be futile. *See Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *7 (granting motion for judgment on the pleadings in COVID-19 insurance coverage case without leave to amend). Accordingly, the Court **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.[2] The Court shall enter a separate judgment, after which the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 19, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge

---

[2] As dismissal is with prejudice, AFM's motion to stay discovery (ECF No. 27) is denied as moot. Plaintiffs' request for judicial notice (ECF No. 30) is also denied as moot.